# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

          Plaintiff,

v.

LOGAN CHRISTOPHER MURFIN,
a/k/a "Azulenq,"

          Defendant.

Case No. 25-CR-463-GKF

**<u>Government's Response to Defendant's Motion to Dismiss Indictment (Dkt. 20)</u>**

**Table of Contents**

Background ...................................................................................................1

Legal Standard and Authority...................................................................2

    I.    If a trial on the facts would be of "any assistance," the Court must
        deny the Rule 12 motion ...............................................................2

    II.   Whether a statement is a true threat is a "fact-intensive inquiry" of whether
        a reasonable person could interpret the statement as a serious expression
        to commit an act of unlawful violence, regardless of the speaker's actual
        intent ...........................................................................................3

    III.  Because the true-threat analysis is a fact-intensive inquiry, whether a
        statement is a true threat is a question for the jury .........................6

Argument ....................................................................................................8

    I.    The Court should deny Murfin's motion to dismiss because a reasonable jury
        could find that Murfin's statements were true threats ....................8

    II.   The Court should deny Murfin's motion because granting it would violate
        Tenth Circuit precedent and Rule 12 of the Federal Rules of Criminal
        Procedure.....................................................................................10

    III.  Murfin's motion does not provide any basis to dismiss the indictment.........11

        A. Murfin's arguments contradict binding precedent.............................11

        B. Murfin cannot show dismissal is warranted by comparing his case to
           past cases .................................................................................14

Conclusion ...............................................................................................19

## Table of Authorities

### Cases

*Counterman v. Colorado,* 600 U.S. 66 (2023) ......................................................3, 9, 12-13

*Terry v. Drummond*, 2025 WL 707451 (10th Cir. Mar. 3, 2025)................................12

*United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011)........................................17

*United States v. Bellrichard*, 994 F.2d 1318 (8th Cir. 1993)..........................................6

*United States v. C.S.*, 968 F.3d 237 (3d Cir. 2020)........................................................5

*United States v. Chavez*, 29 F.4th 1223 (10th Cir. 2022).........................................3, 11

*United States v. Christenson*, 653 F.3d 697 (8th Cir. 2011)......................................4, 13

*United States v. Crews*, 781 F.2d 826 (10th Cir. 1986)..................................................7

*United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015).........................3-6, 9-11, 15-17

*United States v. Gear*, 2025 WL 1266734 (D. Nev. Apr. 28, 2025)...............................7

*United States v. Hall,* 20 F.3d 1084 (10th Cir. 1994)...............................................2, 14

*United States v. Martin*, 163 F.3d 1212 (10th Cir. 1998) ..........................................5, 7

*United States v. Miah*, 546 F. Supp. 3d 407 (W.D. Pa. 2021) .......................................7

*United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010) ...............................................11

*United States v. Ream*, 506 F. App'x 842 (10th Cir. 2013)...........................................7

*United States v. Sayward*, 2022 WL 17849053 (D.N.D. Dec. 22, 2022) .......................7

*United States v. Schneider*, 910 F.2d 1569 (7th Cir. 1990) ...........................................4

*United States v. Stevens*, 881 F.3d 1249 (10th Cir. 2018)...........................5-6, 9, 13, 17

*United States v. Stevens*, 2016 WL 7442657 (N.D. Okla. Dec. 27, 2016) ............ 6, 8, 18

*United States v. Syring*, 522 F. Supp. 2d 125 (D.D.C. 2007) .......................................8

*United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999)........................5, 7, 15-16, 18

*United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015) .......................4-7, 9-10, 16-17

*United States v. White*, 670 F.3d 498 (4th Cir. 2012) .................................................17

*Virginia v. Black*, 538 U.S. 343 (2003).........................................................3, 8, 11-12

*Watts v. United States*, 394 U.S. 705 (1969) .........................................................9, 15

**Federal Statutes**

18 U.S.C. § 115(a)(1)(B) ...............................................................................1, 12

18 U.S.C. § 875(c) ...................................................................................... 1, 12-13

**Federal Rules**

Fed. R. Crim. P. 12(b)(3) ...............................................................................2, 11

Using the alias "Azulenq," Defendant Logan Murfin publicly posted multiple threats on his online social media account urging and justifying the shooting and execution of federal ICE agents. In these threats, Murfin affirmed the "need" to shoot "every ICE agent … between the eyes," exhorted that "everyone should stay armed" and when ICE agents "come by just kill them" to "show em" consequences, and declared that "we as US citizens should be gunning down" ICE agents because the agents have "gotta be executed" for their acts.

Taking these threats seriously, law enforcement was able to identify "Azulenq" as Murfin, and a federal grand jury indicted Murfin for his threats to murder federal agents. Murfin now claims his statements are protected by the First Amendment and moves to dismiss the indictment. Dkt. 20. The Court should deny his motion because a reasonable jury could conclude that Murfin's posts constitute true threats, which the Supreme Court made clear are not protected by the First Amendment.

## Background

Looking solely within the four corners of the indictment as required, the grand jury indicted Murfin on ten counts: five counts for violating 18 U.S.C. § 115(a)(1)(B) and five counts for violating 18 U.S.C. § 875(c). The grand jury based those charges on five posts that Murfin made to his online social media account threatening the murder and execution of United States Immigration and Customs Enforcement ("ICE") agents. Murfin made the posts under the alias, "Azulenq." *See* Dkt. 2. Murfin's five posts forming the basis of the charges stated:

- "Need too start shooting these 'just following orders' pigs. Ice agents are reenacting ww2 nazi germany and its not acceptable. Only good ice terrorist is buried 6 feet under." (Counts 1-2)

- "Every ICE agent needs shot between the eyes 'just following orders' isnt acceptable and they already exposed they are human garbage." (Counts 3-4)

- "Every Ice gestapo needs too be shot. 2nd amendment right too carry everyone should stay armed and when these terrorists come by just kill them. They dont deserve too live after 'just following orders' we aren't reliving ww2 germany. They dont want due process so show em." (Counts 5-6)

- "but we as US citizens should be gunning down these domestic terrorists. All ice gestapo can not use the 'just following orders' excuse. If you're complicit in this act you've gotta be executed for this act." (Counts 7-8)

- "Yeah ICE agents need to get shot in a 3,959 mile radius no where safe for gestapo pigs." (Counts 9-10).

Murfin filed a pretrial motion to dismiss the indictment on First Amendment grounds. Dkt. 20.

## Legal Standard and Authority

**I.    If a trial on the facts would be of "any assistance," the Court must deny the Rule 12 motion.**

Murfin moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3), which may be granted only if his "motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3); Dkt. 20 at 1 (citing Rule 12(b)(3)(B)(v)). On a motion to dismiss, the "indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). "Courts should refrain from considering evidence outside the indictment when testing its legal

sufficiency." *Id.* If a trial on the facts would "be of any assistance in determining the validity of the motion, the prosecution must continue." *United States v. Chavez*, 29 F.4th 1223, 1226-27 (10th Cir. 2022) (internal citation omitted).

II.    **Whether a statement is a true threat is a "fact-intensive inquiry" of whether a reasonable person could interpret the statement as a serious expression to commit an act of unlawful violence, regardless of the speaker's actual intent.**

"True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). A "true threat" is "a serious expression of an intent to commit an act of unlawful violence to a particular … group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "The 'true' in that term distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow[.]" *Counterman*, 600 U.S. at 74 (internal quotation omitted). For a statement to be a true threat, "[i]t is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat." *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (internal quotation omitted). "It is the making of the threat and not the intention to carry out the threat that violates the law." *Id.*

"The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Counterman*, 600 U.S. at 74. Prohibiting true threats "protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Black*, 538 U.S. at 360 (internal

3

quotations omitted). That is why threats meant solely to intimidate (rather than precipitate actual physical harm) are still unprotected by the First Amendment. *Id.*

Whether a statement is a true threat turns on an "objective test" that asks "whether those who hear or read the threat reasonably consider that an actual threat has been made." *Dillard*, 795 F.3d at 1199. Thus, a true threat is a statement that could reasonably be interpreted as a serious expression to commit an act of unlawful violence, regardless of whether the speaker actually intended to carry out the threat.

This objective analysis "requires a fact-intensive inquiry, in which the language [of the statements], the context in which the statements are made, as well as the recipients' responses are all relevant." *Dillard*, 795 F.3d at 1199. If the target of the threat responds as if the statement was a threat, that suggests it is a true threat. *See, e.g.*, *United States v. Wheeler*, 776 F.3d 736, 746 (10th Cir. 2015) (relying on the victims' frightened responses to the threats); *United States v. Schneider*, 910 F.2d 1569, 1571 (7th Cir. 1990) ("The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could reasonably be believed and therefore that it is a threat.").

There are no magic words a speaker must use to render a statement a true threat. *See United States v. Christenson*, 653 F.3d 697, 701 (8th Cir. 2011) ("[N]o particular formulation of words is required to state a true treat."). On the contrary, the Tenth Circuit has warned against relying too heavily on the precise wording of the statement: "As to a message's language, we have warned against rigid adherence to the literal meaning of a communication without regard to its reasonable

4

connotations[.]" *United States v. Stevens*, 881 F.3d 1249, 1253 (10th Cir. 2018) (internal quotation omitted). Thus, "a defendant cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence." *Id.* (internal quotation omitted). Otherwise, federal law would be "powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." *Dillard*, 795 F.3d at 1201 (internal quotation omitted).

Just as there are no requirements that the speaker intend to carry out the threat or use particular words in communicating the threat, the message need not convey an "imminent" threat, suggest that the speaker will be the one to carry out the threat, or be communicated directly to the victim. *See, e.g.*, *Dillard*, 795 F.3d at 1200 (rejecting any requirement that a true threat convey "imminent" violence); *id.* at 1200-01 ("[A] direct statement of personal intent is not necessary [to be a true threat]."); *United States v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998) ("This court has not required that true threats be made directly to the proposed victim."). And an "exhortation" or mere "wish" for violence can be a true threat. *See, e.g.*, *Wheeler*, 776 F.3d at 744-45 (opining that "exhortations to unspecified others to commit violence" can be true threats); *United States v. C.S.*, 968 F.3d 237, 245 (3d Cir. 2020) ("There is no rule that conditional statements, statements conveying a vague timeline or condition, or even wishes can never be a true threat." (internal citations omitted)).

Further, it remains a true threat even if it is prompted or accompanied by political rhetoric or issues of public concern. *See, e.g.*, *United States v. Viefhaus*, 168 F.3d 392,

396 (10th Cir. 1999) ("The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability."); *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993) ("[A] person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern."); *United States v. Stevens*, No. 16-CR-0134-CVE, 2016 WL 7442657, at *2 (N.D. Okla. Dec. 27, 2016), aff'd, 881 F.3d 1249 (10th Cir. 2018) ("The fact that defendant sent the messages in response to an event that garnered national attention and is a part of a larger political debate concerning race and policing does not preclude the communications from being true threats.").

**III.    Because the true-threat analysis is a fact-intensive inquiry, whether a statement is a true threat is a question for the jury.**

To return to the operative analysis, then, the true-threat analysis turns simply on whether "a reasonable person would interpret the statements to be threats—a fact-intensive inquiry." *Wheeler*, 776 F.3d at 744 (internal quotation omitted).

"Because this test involves a fact-intensive inquiry, we have consistently held that whether a defendant's statement is a true threat or mere political speech is a question for the jury." *Dillard*, 795 F.3d at 1199 (internal quotation omitted). If "a reasonable jury could find that the communications constitute true threats," the Court should deny a motion to dismiss. *Stevens*, 881 F.3d at 1252 (internal quotation omitted). Only if "there is no question" that the defendant's statements were not a true threat may the Court "dismiss the charge as a matter of law." *Wheeler*, 776 F.3d at 742. The Tenth Circuit cabined this occurrence, however, to only the most "unusual set of

facts," and reemphasized that the question of whether statements amount to true threats "is a question generally best left to a jury." *Id.* (internal quotation omitted).

Indeed, the Tenth Circuit has repeatedly emphasized that whether statements are true threats should go to the jury. *See, e.g.*, *Wheeler*, 776 F.3d at 742 ("[W]hether a defendant's statement is a true threat or mere political speech is a question for the jury." (quoting *Viefhaus*, 168 F.3d at 397)); *United States v. Ream*, 506 F. App'x 842, 845 (10th Cir. 2013) ("[T]he district court properly denied Mr. Ream's motion to dismiss the indictment on First Amendment grounds and properly submitted this factual issue to the jury."); *Martin*, 163 F.3d at 1216 ("Whether a statement constitutes a true threat under 18 U.S.C. § 115 represents a jury question[.]"); *United States v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986) ("Ultimately the question of whether defendant's statement was political speech was a jury question.").[1]

---

[1] District courts around the country have likewise recognized that whether statements are true threats should be decided by a jury, and not on a pretrial motion to dismiss. *See, e.g.*, *United States v. Gear*, No. 2:24-CR-152-JAD-BNW, 2025 WL 1266734, at *7 (D. Nev. Apr. 28, 2025), report and recommendation adopted, 2025 WL 2268087 (D. Nev. Aug. 8, 2025) ("Even if the indictment is 'light,' that does not foreclose the possibility that the record at trial will contain enough evidence to support a conviction. Because nothing in the indictment is inconsistent with or prevents a jury from finding the statements to be true threats, the Court cannot conclude that Gear's communications are protected speech as a matter of law."); *United States v. Sayward*, No. 3:22-CR-111, 2022 WL 17849053, at *3-4 (D.N.D. Dec. 22, 2022) (denying motion to dismiss because "the threshold question of whether a communication constitutes a true threat is a question that is routinely left to the jury, not the Court, to answer"); *United States v. Miah*, 546 F. Supp. 3d 407, 423 (W.D. Pa. 2021), aff'd, No. 22-2983, 2024 WL 4249493 (3d Cir. Sept. 20, 2024) (denying motion to dismiss because "whether Defendant's tweets are true threats, as the Government contends, or hyperbole, as he submits, is a factual dispute for the jury to determine, not one for the Court to decide as a matter of law on the present record");

## Argument

**I.    The Court should deny Murfin's motion to dismiss because a reasonable jury could find that Murfin's statements were true threats.**

A reasonable jury could interpret Murfin's statements on his social media account as true threats. So the Court should deny Murfin's motion.

As quoted in the indictment (Dkt. 2), Murfin affirmed:

- the "Need to start shooting [federal ICE agents] (Counts 1-2);

- his intent that "Every ICE agent needs shot between the eyes" (Counts 3-4);

- his intent that every ICE agent "needs too [sic] be shot" and his exhortation that whenever an ICE agent is encountered, "just kill them" so Murfin and his followers can "show em" consequences (Counts 5-6);

- his exhortation to his followers that "we as US citizens should be gunning down these [ICE agents]" because they "gotta be executed" for their actions (Counts 7-8); and

- his intent that "ICE agents need to get shot in a 3,959 mile radius," *i.e.*, the radius of the Earth (Counts 9-10).

Considering the language and connotations, a reasonable jury could find these statements a "serious expression of an intent to commit an act of unlawful violence to a particular … group of individuals" and thus, a true threat. *Black*, 538 U.S. at 359.

Murfin's statements were explicit and unambiguous, and he made clear of the

---

*Stevens*, 2016 WL 7442657, at *2 (Judge Eagan denying motion to dismiss); *United States v. Syring*, 522 F. Supp. 2d 125, 134 (D.D.C. 2007) (denying motion to dismiss even though "on its face the Indictment does not present a compelling case," because "even based on the meager context alleged in the Indictment, it [is] possible that a reasonable jury could interpret Defendant's communications as [a true threat]").

"need", the desire, and the justification to immediately murder ICE agents. His "posts do not simply *imply* that some individuals should be killed; they *explicitly* call for the killing of [ICE agents]." *Wheeler*, 776 F.3d at 746 (emphasis in original). Murfin "targeted messages of deadly action at [ICE agents] generally" and his statements were "specific, deadly" in nature, so "a reasonable jury could find from their language and context that they were true threats." *Stevens*, 881 F.3d at 1255; *see Wheeler*, 776 F.3d at 745 (opining that "exhorting" potential followers "to kill specific individuals" can reasonably be considered a true threat).

What's more, Murfin's threats of death and murder were not limited to a specific location or date (as to limit the scope of the threat), but instead exhorted people to murder any ICE agent wherever and whenever they're encountered. *See, e.g.*, Dkt. 2, Count 5 ("when these terrorists come by just kill them"); Count 9 (exhorting the murder of ICE agents worldwide). And unlike in other true-threat cases,[2] Murfin's threats were not even conditioned on some other event happening first—rather, he exhorted immediate, unconditional action. It is reasonable to believe that this would cause a "fear of violence." *Counterman*, 600 U.S. at 74.

This is further buttressed considering that Murfin posted his threats publicly on his social media account under the alias, "Azulenq." *See* Dkt. 2 (noting the alias).

---

[2] *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 707-08 (1969) (finding a statement not a true threat where the alleged threat "was expressly made conditional upon an event … which petitioner vowed would never occur," was made at a political rally, and resulted in the audience laughing); *Dillard*, 795 F.3d at 1200 ("[O]ur cases make clear that a statement may constitute a true threat even if it is conditional.").

That is, he made his threats and exhortations public and his identity private. Murfin exhorted any number of like-minded—or more dangerous—individuals online to murder ICE agents. And his use of an alias hid the source of the threat and the identity of the potential murderer from law enforcement. Law enforcement, including ICE agents, therefore had no idea if they were encountering "Azulenq" or his like-minded followers. A reasonable person would find that this unknown-factor only exacerbated the fear and danger. *See Wheeler*, 776 F.3d at 745, n.4 (observing that the Internet can "substantially amplify the fear an individual can instill via threats or incitement" because the threats can "reach a vast audience" and the "threats may often come cloaked in anonymity, allowing authors to make menacing statements they would never [otherwise] consider making;" and further noting that online, threatening "exhortations may often find a receptive audience of like-minded individuals—perhaps audiences more willing to do the bidding of one urging violent action").

For all these reasons, a reasonable jury could find that Murfin's statements were true threats. The Court should deny the motion to dismiss.

II.    **The Court should deny Murfin's motion because granting it would violate Tenth Circuit precedent and Rule 12 of the Federal Rules of Criminal Procedure.**

Dismissal is further improper because, as discussed above, the true-threat analysis is "a fact-intensive inquiry" that "is a question for the jury." *Dillard*, 795 F.3d at 1199. In addition to the language and connotations of the threats, relevant considerations for the jury include "the context in which the statements are made, as

well as the recipients' responses[.]" *Id.* The government will introduce that evidence at trial, including the immediate context of Murfin's posts, the dangers and risks law enforcement faces, law enforcement's response to Murfin's threats, and Murfin's admissions in his post-*Miranda* interview. That is why, as the Tenth Circuit repeatedly emphasized, pretrial dismissal is inappropriate.

For the same reasons, Rule 12 also makes clear that pretrial dismissal is wrong. Because the evidence and contested facts to be presented at trial "would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (emphasis in original); *see* Fed. R. Crim. P. 12(b)(3) (allowing granting of motion only if "the motion can be determined without a trial on the merits"). Otherwise, it "would risk trespassing on territory reserved to the jury as the ultimate finder of fact in our criminal justice system." *Chavez*, 29 F.4th at 1227 (internal quotation omitted). The Court should thus deny Murfin's motion.

## III. Murfin's motion does not provide any basis to dismiss the indictment.

Murfin's arguments as to why dismissal is warranted are unavailing, as his arguments ignore and conflict with Supreme Court and Tenth Circuit precedent.

### A. Murfin's arguments contradict binding precedent.

Murfin begins by arguing that his statements were not threats "because they fail to communicate his intent to commit the acts [of] violence described therein." Dkt. 20 at 2. Binding precedent refutes this argument. *See, e.g.*, *Black*, 538 U.S. at 359-60 ("The speaker need not actually intend to carry out the threat."); *Dillard*, 795 F.3d at

1199 ("It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. … It is the making of the threat and not the intention to carry out the threat that violates the law.").[3]

Murfin similarly argues that his statements were not "threats (let alone true threats)," apparently distinguishing between "threats" and "true threats." Dkt. 20 at 21, 22. It is unclear what his point is here, but regardless, this argument fails too. The question at issue is whether a reasonable jury could find his statements to be true threats, which the Supreme Court defined as "a serious expression of an intent to commit an act of unlawful violence to a particular … group of individuals." *Black*, 538 U.S. at 359. And rather than distinguish between a "threat" and a "true threat," the Supreme Court clarified that the term "true" simply signifies that the message includes a serious expression of potential harm (threat) versus an unserious one (not

---

[3] Murfin's subjective intent is not relevant here as the First Amendment's true-threat analysis is based on an objective standard as discussed herein. But the government acknowledges that at trial, it must show Murfin's subjective intent to ultimately prove the charged offenses. *Counterman*, 600 U.S. at 72 (explaining that while "a statement can count as [an unprotected true] threat based solely on its objective content," the defendant must have some subjective mens rea to be convicted of the charged offenses). Murfin's argument here, however, does not describe that mens rea element correctly. The mens rea for the Section 115(a)(1)(B) charges is found in the statute itself: "intent to impede, intimidate, or interfere with [the federal agent]" or "intent to retaliate against [the federal agent]." The mens rea for the Section 875(c) charges is recklessness. *See id.* at 69; *Terry v. Drummond*, No. 24-6046, 2025 WL 707451, at *9 (10th Cir. Mar. 3, 2025) ("In *Counterman*, the Supreme Court clarified the requisite intent for 'true threat' prosecutions is recklessness, which means the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." (internal quotation omitted)).

a threat): "[t]he 'true' in that term distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow, [such as] 'I am going to kill you for showing up late'." *Counterman*, 600 U.S. at 74 (internal quotations omitted).

As discussed, a reasonable jury could find that Murfin's statements were true threats based on the face of the indictment as well as the contextual evidence that will be presented at trial. That ends the analysis. Murfin's confused attempt to distinguish between a "threat" and a "true threat" is an unfounded red herring, particularly considering that the Tenth Circuit stated the terms are synonymous. *See, e.g.*, *Stevens*, 881 F.3d at 1253 ("In § 875(c) prosecutions, we have followed the Supreme Court's definition of a threat as 'a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'"). Yet even if there were a difference between those terms that mattered here, a reasonable person could find that Murfin's statements communicated at least an "intention," "purpose," or "goal" of harm to ICE agents. *See* Dkt. 20 at 21.

Murfin also incorrectly argues that his statements were not true threats because they did not "indicate that the violence *will* occur, merely that it *ought* to occur." Dkt. 20 at 20. He essentially argues that he did not use particular words necessary for true threats. But this runs afoul of the Tenth Circuit's admonition "against rigid adherence to the literal meaning of a communication without regard to its reasonable connotations." *Stevens*, 881 F.3d at 1253; *see also id.* ("[A] defendant cannot escape potential liability simply by using the passive voice[.]"); *Christenson*, 653 F.3d at 701

13

("[N]o particular formulation of words is required to state a true treat."). Moreover, Murfin's statements did not simply suggest violence "ought" to occur. For example, Murfin instructed that whenever ICE agents are encountered to "just kill them" in order to "show em" consequences (Counts 5-6); and "*we* as US citizens should be gunning down" ICE agents because they've "*gotta* be executed" (Counts 7-8 (emphasis added)). A reasonable person reading these statements, with their reasonable connotations, could find them sufficiently threatening.

Murfin relatedly argues that ICE did not view his statements as threatening based on a social media post on ICE's Facebook and Truth Social pages. Dkt. 20 at 21-22. To begin with, the Court cannot consider this post as it is not within the indictment and the government objects to its consideration. *See Hall*, 20 F.3d at 1087. More to the point, though, what the individual running ICE's social media platforms—be he an intern or paid employee—thought of Murfin's posts *after* Murfin was identified and arrested is completely irrelevant to how a reasonable person would view the unidentified "Azulenq's" statements at the time those statements were made. Likewise, the summary of Murfin's statements provided in ICE's social media post is irrelevant—what are relevant are the statements as quoted in the indictment.

### B. Murfin cannot show dismissal is warranted by comparing his case to past cases.

Murfin lastly cherry-picks various details from past cases to try to show how his statements were not true threats. Dkt. 20 at 20-22. But this argument fails for two main reasons. First, those cases were decided *after* the factual record was fully

developed, again highlighting the fatal flaw in his pretrial motion.[4] Second, his resort to comparing his case to the facts of other cases ignores that the true-threat analysis is a "fact-intensive inquiry." What matters is whether a reasonable jury could find Murfin's statements threatening when considering factors like the statements' language, connotations, context, and reactions—not whether Murfin's case is similar to past cases involving different language, different connotations, different contexts, and different reactions.

But even if the Court were to compare this case to previous true-threat cases, there is still no basis to dismiss this case. For example, the Supreme Court in *Watts* found the defendant's statements were not true threats based on factors that are not present here. There, the defendant made his statements at a political rally, conditioned his alleged threat on something he claimed "would never occur," and the defendant and audience laughed at the statement. *Watts*, 394 U.S. at 706; *see id.* at 708 (finding no true threat based on the "context, and regarding the expressly conditional nature of the statement and the reaction of the listeners"). Murfin, in contrast, was not at a political event, made his threats unconditional, and neither Murfin nor law enforcement found his threats comedic.

In *Viefhaus*, the defendant's threats were recorded on an answering machine that

---

[4] The sole exception was *United States v. Stevens*, where the defendant pleaded guilty before trial but reserved his right to appeal his pretrial motion to dismiss. 881 F.3d at 1251. *Dillard* also did not go to trial, but that was still decided on a full factual record as that was a civil case decided at the summary-judgment stage. 795 F.3d at 1195.

people had to call to listen to, the threats involved the potential bombing of 15 unspecified cities, and the threatened bombings were conditioned on certain actions not being taken over the ensuing week. 168 F.3d at 394. In contrast, Murfin actively disseminated his threats publicly online, he specified the target of his threats, and his threats were unconditional.

In *Wheeler*, the defendant encouraged his (nonexistent) followers to kill police officers' children and that *if* his DUI charges were not dropped, to "commit a massacre … just walk in and kill everybody." 776 F.3d at 745. The Tenth Circuit found these could be considered true threats because "they explicitly call for the killing of a number of individuals." *Id.* at 746. Murfin's unconditional threats— which include very similar language of "just kill them" (Counts 5-6)—explicitly call for the same.

In *Dillard*, the Tenth Circuit found that the defendant's statements could be a true threat where the defendant wrote a letter using her real name and return address, in which she told the victim, "You will be checking under your car everyday—because maybe today is the day someone places an explosive under it." 795 F.3d at 1196. The FBI did not view this as a threat, so did not respond accordingly. *Id.* at 1197. Murfin's threats, in which he disguised his identity with an alias, went further. Rather than "someone" harming the victim, Murfin included himself as part of the actors. *E.g.*, Dkt. 2, Counts 5-6 ("*everyone* should stay armed … and just kill them"); Counts 7-8 ("*we* as US citizens should be gunning down [ICE agents because

16

they've] gotta be executed"). He did not couch his threat in terms of "maybe." And unlike the FBI in *Dillard*, law enforcement treated Murfin's statements as threats.

In *Stevens*, the defendant's threats included messages directed "at TPD officers generally," including, for example, "If killing every last one of you [TPD officers] and your families … your wives … your children is what it takes to drive [that point] home, so be it." 881 F.3d at 1255 (all edits in original). That threat did not specify that the defendant himself would kill them or that their murder "would" occur, as Murfin contends. Yet the Tenth Circuit concluded it could still be a true threat. So too here.

Murfin likens his statements to the out-of-circuit decisions in *Bagdasarian* (Ninth Circuit) and *White* (Fourth Circuit). Dkt. 20 at 22. There are multiple reasons the Court should decline to rely on this out-of-circuit caselaw. Most notably, the Tenth Circuit has already rejected the same reliance on those cases that Murfin proposes here. Like Murfin, the defendant in *Wheeler* relied on those two cases to argue that his statements were not true threats "because his posts did not state his own intention to harm anyone." 776 F.3d at 743. The Tenth Circuit rejected the reasoning in *Bagdasarian* and *White* "as inconsistent with this court's established precedent." *Id.* at 744.

Beyond that, Murfin's reliance on those two cases shows why his arguments fail. Citing *White*, he argues that he "did not communicate an intent to take any action whatsoever." Dkt. 20 at 22. But as stated multiple times above, the speaker need not intend to actually take the threatened action, and the language and connotations of

17

Murfin's threats show a call to action in which he would participate. Murfin also claims his posts were simply "abusive" "political language" that stated "a political opposition to the activities of ICE agents." *Id.* But a reasonable jury could find Murfin's statements were true threats, not simply political rhetoric. And even if Murfin's threats were colored by politics, that does not make his threats protected speech. *See, e.g.*, *Viefhaus*, 168 F.3d at 396 ("The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability."); *Stevens*, 2016 WL 7442657, at *2 ("The fact that defendant sent the messages in response to an event that garnered national attention and is a part of a larger political debate concerning race and policing does not preclude the communications from being true threats.").

For all these reasons, the Court should deny Murfin's motion to dismiss.[5]

---

[5] Murfin spends much of his brief also discussing the *Brandenburg* incitement doctrine. That discussion is not relevant here, and he appears to discuss that doctrine solely to request that the Court dismiss the indictment with prejudice. Any dismissal here should be without prejudice. As Murfin acknowledges, "Normally, indictments are dismissed without prejudice." Dkt. 20 at 22. The threats quoted in the indictment are not the only threats Murfin communicated. Therefore, dismissal with prejudice would be premature and unwarranted.

18

## Conclusion

The Court should deny Murfin's motion to dismiss because a reasonable jury could find that Murfin's statements were true threats. Further, pretrial dismissal of the indictment would violate Tenth Circuit precedent and Rule 12.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY


*/s/ Stephen N. Scaife*
Stephen N. Scaife, DC Bar #1656371
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

19

**Certificate of Service**

I hereby certify that on the 13th day of March, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF recipients:

Jared Guemmer
Jason Lollman
*Defense Counsel*

/s/ *Stephen N. Scaife*
Stephen N. Scaife
Assistant United States Attorney