**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CR-463-GKF** |
| | ) | |
| **LOGAN CHRISTOPHER MURFIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**OPINION AND ORDER**</u>

This matter comes before the court on the Motion to Dismiss Indictment [Doc. 20] of defendant Logan Christopher Murfin.  For the reasons set forth below, the motion is denied.

### I.   <u>Background</u>

At various times from July to October, 2025, Mr. Murfin allegedly posted the following five statements on the social media platform, "X" (formerly known as Twitter) under the alias "Azulenq":

> "Need too start shooting these 'just following orders' pigs. Ice agents are reenacting ww2 nazi germany and its not acceptable. Only good ice terrorist is buried 6 feet under.";

> "Every ICE agent needs shot between the eyes 'just following orders' isn't acceptable and they already exposed they are human garbage.";

> "Every Ice gestapo needs too be shot. 2nd amendment right too carry everyone should stay armed and when these terrorists come by just kill them. They dont deserve too live after 'just following orders' we aren't reliving ww2 germany. They dont want due process so show em.";

> "but we as US citizens should be gunning down these domestic terrorists. All ice gestapo can not use the 'just following orders' excuse. If you're complicit in this act you've gotta be executed for this act."; and

> "Yeah ICE agents need to get shot in a 3,959 mile radius no where safe for gestapo pigs."

[Doc. 2].

On December 2, 2025, a grand jury returned an Indictment [Doc. 2] charging Mr. Murfin with five counts of Threatening to Assault and Murder Federal Law Enforcement Officers with Intent to Impede, Intimidate, Interfere, and Retaliate in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4), and five counts of Interstate Communication with a Threat to Injure in violation of 18 U.S.C. § 875(c).  Each of the five statements constitutes the basis for one count of Threatening to Assault and Murder Law Enforcement Officers with Intent to Impede, Intimidate, Interfere, and Retaliate, and one count of Interstate Communication with a Threat to Injure.

Mr. Murfin now moves to dismiss the Indictment pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.

## II.    **Evidence Outside the Indictment**

Mr. Murfin attaches evidentiary materials outside the indictment to his motion, and urges the court to consider them in its ruling.  He argues that ICE's Facebook and Truth Social posts show that "[e]ven ICE itself did not believe the statements reflected threats."  [Doc. 20, pp. 26-27].

"Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006).  "Rather, '[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.'" *Id.* (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).  For this reason, courts should avoid considering evidence outside the indictment when testing the indictment's legal sufficiency. *Todd*, 446 F.3d at 1067.  Courts may entertain motions to dismiss that require resort to facts outside the indictment and bearing on the general issue in the limited circumstances where [1] the operative

facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts, and [3] the district court can determine from them that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt. *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (quoting *Hall*, 20 F.3d at 1088). Here, the government objects to the court's consideration of the social media posts. *See* Doc. 24 at p. 18. Accordingly, the court does not consider the social media posts for the purposes of the motion.

### III.    Standard

Mr. Murfin argues that the Indictment should be dismissed because his statements do not constitute true threats.

Whether a reasonable jury could find Mr. Murfin's statements to be true threats is a question of law. "[I]f there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *United States v. Stevens*, 881 F.3d 1249, 1252 (10th Cir. 2018) (quoting *United States v. Wheeler*, 776 F.3d 736, 742 (10th Cir. 2015)). "But, absent an 'unusual set of facts,' the question whether statements amount to true threats 'is a question generally best left to a jury.'" *Wheeler*, 776 F.3d at 742 (quoting *United States v. Malik*, 16 F.3d 45, 51 (2d Cir. 1994)). "If the court determines a 'reasonable jury could find that the [] communication[s] constitute[] . . . true threat[s]," then it may deny the defendant's motion to dismiss. *Stevens*, 881 F.3d at 1252 (quoting *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013)).

### IV.    Analysis

#### A.    True Threats

Sections 18 U.S.C. §§ 115(a)(1)(B) and 875(c), like all threat statutes, "apply only to 'true threat[s]'—i.e., threats outside the protective scope of the First Amendment." *Wheeler*, 776 F.3d at 742-43 (quoting *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999)). "The Supreme

3

Court in *Virginia v. Black* [538 U.S. 343, 359 (2003)] defined 'true threats' as 'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Wheeler*, 776 F.3d at 743. The speaker, however, "need not intend to actually act upon the threat." *Id.* As the Tenth Circuit has explained:

> It is not necessary to show that [Mr. Murfin] intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made*. It is the making of the threat and not the intention to carry out the threat that violates the law.

*United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (quoting *Viefhaus*, 168 F.3d at 395-96). A true threat must be "a serious threat as distinguished from words as mere political argument, idle talk or just." *Wheeler*, 776 F.3d at 743 (quoting *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987).

To answer the question of whether those who hear or read the threat reasonably consider that an actual threat has been made, the language of the statements and the context in which the statements are made are relevant. *Stevens*, 881 F.3d at 1253. When analyzing a statement's language, the Tenth Circuit has "warned against 'rigid adherence to the literal meaning of a communication without regard to its reasonable connotations . . . .'" *Stevens*, 881 F.3d at 1253-54 (quoting *Dillard*, 795 F.3d at 1201). "A defendant cannot escape potential liability simply by using the passive voice or couching a threat in terms of 'someone' committing an act of violence, so long as a reasonable recipient could conclude, based on the language of the communication and the context in which it is delivered, that this was in fact a veiled threat of violence by the defendant . . ." *Dillard*, 795 F.3d at 1201.

Upon review of the indictment and the briefs submitted by the parties, the court concludes that a reasonable jury could construe Mr. Murfin's statements to be true threats—that they are statements where the speaker means to communicate serious expressions of intent to commit acts of unlawful violence to a group of individuals.  Mr. Murfin targeted messages of deadly action at ICE agents generally:  "Need too start shooting these 'just following orders' pigs . . . . Only good ice terrorist is buried 6 feet under."; "Every ICE agent needs shot between the eyes"; "Every Ice gestapo needs too be shot . . . . everyone should stay armed and when these terrorists come by just kill them."; "we as US citizens should be gunning down these domestic terrorists . . . . If you're complicit in this act you've gotta be executed for this act"; "ICE agents need to get shot."  Mr. Murfin's statements are similar to those in *Stevens* and *Tinoco*, where the defendants also targeted messages of deadly action at a particular law enforcement officer or a group of law enforcement officers generally.  *Stevens*, 881 F.3d at 1256-58 ("The psychotic pile of s--- who MURDERED the unarmed civilian who broke down is going to be executed . . . . unless the Prosecuter [*sic*] & the Judge deny bail, they too will be executed . . . . The Tulsa PD Chief is going to be killed . . . . EVERYONE on that list is going to start being killed. Cops, Prosecutors, Judges, family members . . . . If killing every last one of you . . . is what it takes to drive that point home, so be it . . . . Cops are going to be killed . . . . Betty is not going to get 3 yeas [*sic*] probation and a pension, she is getting a bullet through her brain."); *Tinoco*, 730 F. App'x at 583 (Mr. Tinoco said, "[i]f [the United States Border Patrol agents] were iron deficient, [Tinoco] had banana clips for [the agents], and [Tinoco] could give [the agents] iron and potassium"; "I'm going to have your head"; [l]et's have a shootout and end this right now . . . . I've been at shootouts before. I know what I'm doing"; and "I can be sure to come at your brain with a hammer drill as if I was searching for fucking gold").

5

Mr. Murfin cannot escape liability by couching the statements in terms of a "need" to shoot or execute ICE agents. A reasonable reader of Mr. Murfin's statements could conclude that the statements are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a . . . group of individuals." *Wheeler*, 776 F.3d at 743 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). Furthermore, a reasonable jury could find the statements to constitute serious threats as distinguished from "mere political argument, idle talk, or jest." *Wheeler*, 776 F.3d at 743 (quoting *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987)). "[R]igid adherence to the literal meaning of a communication without regard to its reasonable connotations . . . would render the statute[s] powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." *Dillard*, 795 F.3d at 1201 (quoting *United States v. Turner*, 720 F.3d 411, 422 (2d Cir. 2013)).

The Tenth Circuit has counseled that the context in which the statements were made may include *where* they were made. *Stevens*, 881 F.3d at 1254. Here, the Indictment alleges that Mr. Murfin posted the statements on his social media account. With respect to statements posted on the Internet, the Circuit has noted:

> Several attributes of the Internet substantially amplify the fear an individual can instill via threats or incitement. Such threats have the ability to reach a vast audience—far more than the traditional speaker or author published in a single venue. The threats may often come cloaked in anonymity, allowing authors to make menacing statements they would never consider making to an individual in person. And, given the prevalence and diversity of Internet fora and discussion boards, such exhortations may often find a receptive audience of like-minded individuals—perhaps audiences more willing to do the bidding of one urging violent action.

*Wheeler*, 776 F.3d at 745 n.4.  In those statements, he exhorted readers to kill ICE agents.  [Doc. 2 (". . . everyone should stay armed and when these terrorists come by just kill them."; ". . . we as US citizens should be gunning down these domestic these domestic terrorists.")]

For these reasons, the court concludes that a reasonable jury could find that Mr. Murfin's statements constituted true threats.

      B.      *Incitement*

Mr. Murfin also argues that the Indictment should be dismissed with prejudice because plaintiff cannot plausibly make out a cognizable claim that his statements constitute incitement to imminent lawlessness or violence under *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

"Under *Brandenburg v. Ohio* [395 U.S. 444, 447 (1969)], incitement speech is unprotected only if it is 'directed to inciting or producing *imminent* lawless action and is *likely* to incite or produce such action.'"  *Wheeler*, 776 F.3d at 744. "But the line between threats and incitement, especially in cyberspace" is unclear "and no court has suggested that the categories of unprotected speech are completely distinct from one another." *Id.* at 745.  Speech such as Mr. Murfin's "fits squarely within the rationale for excluding true threats from First Amendment protection." *Wheeler*, 776 F.3d at 745; *Dillard*, 795 F.3d at 1200 ("Imminence may contribute to a finding that a communication constitutes a true threat, but it is not a required element.").

Insofar as incitement to imminent lawlessness or violence is not a required element, the court rejects Mr. Murfin's alternative basis for dismissal.

WHEREFORE, the Motion to Dismiss Indictment [Doc. 20] of defendant Logan Christopher Murfin is denied.

IT IS SO ORDERED this 31st day of March, 2026.

Gregory K. Frizzell
United States District Judge

7